IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

QUARTEZ THOMAS,                    )
AIS #291355,                       )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        CASE NO. 2:16-CV-426-WHA
                                   )
JESSE M. BETTS, et al.,            )
                                   )
        Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, Doc. 1,

and an amendment to the complaint, Doc. 11, filed by Quartez Thomas, a state inmate,

against correctional officers Jesse M. Betts and Robin Young.  In this case, Thomas

challenges the use of mace against him on June 1, 2016 at the Kilby Correctional Facility.

Specifically, Thomas alleges that, after he refused orders to relinquish his handcuffs,

defendant Betts "sprayed mace in [his] cell" in violation of his constitutional rights and

internal administrative regulations.  Doc. 1 at 3; Doc. 11 at 3–6.  He also alleges that Betts

violated his right to equal protection.  Doc. 11 at 5.  Thomas further complains that

defendant Young failed to protect him from the use of mace by defendant Betts.  Doc. 11

at 5.  Finally, Thomas appears to complain that the defendants acted with deliberate

_____

[1]All documents and page numbers cited in this Recommendation are those assigned by the Clerk
in the docketing process.

indifference to his medical needs because they delayed his transfer to the health care until he complied with their orders regarding his handcuffs. Doc. 11 at 4. Thomas seeks monetary damages from defendants Betts and Young in their individual capacities and criminal prosecution of the defendants. Doc. 1 at 4; Doc. 11 at 3–6.

The defendants filed a special report, supplement, and supporting evidentiary materials addressing the claims for relief presented by Thomas. In these documents, the defendants deny violating Thomas' constitutional rights. The court issued an order directing Thomas to file responses to the defendants' reports, to include affidavits, sworn statements or other evidentiary materials. Doc. 24 at 2. This order specifically cautioned Thomas that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, … the court may at any time [after expiration of the time for his filing a response to this order] and **without further notice to the parties** (1) treat the special report[s] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 24 at 3. Thomas filed an unsworn response/special report, Doc. 44, and an affidavit, Doc. 44-1, in response to the defendants' reports.[2]

---

[2]The court cannot consider Thomas' response/special report to the defendants' reports because this response is not a sworn statement, nor is it signed with an averment that it was made under penalty of perjury. *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment.").

Pursuant to the above-described order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof, the complaint, as amended, and the affidavit filed in response by Thomas, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate

evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). However, "mere

conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, the plaintiff's pro se status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record.  After this review, the court finds that Thomas has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III.  DISCUSSION[3]

### A.  Relevant Facts

Thomas provides the following recitation of facts relevant to his claims:

On June 1, 2016 at Kilby Correctional Facility in O-Dorm approximately around 10:30 am I was being escorted by correctional officer(s) Jesse M. Betts and Adrian Hardy to O-Block/Dorm [cell O-8A].  Correctional Officer Robin Young was working the Dorm [at this time]… .  I was put in the cell and the door locked.  When the tray flap/slot open[ed] [Betts] proceed[ed] to remove the handcuffs off me.  He then removes one cuff off then reinsert[s] his key in the other [handcuff] but removal of the second cuff was futile because I snatched away not intentionally to cause harm but to have someone of higher authority to come see me.  I'm assuming during that process [Betts] was allegedly hurt because his hand hit the door.[4]

I then take the key out the cuff with my lose hand and throw it out the tray flap/slot and state "This ain't nothing personal."  [Betts] then ask me to give him the cuff back where I said call Captain McClain.  He asks multiple times

---

[3]In accordance with well-settled law, the court limits its review to the allegations set forth in the complaint and amendment.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend his complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court properly refused to address a new theory raised during summary judgment because the plaintiff had not amended the complaint with respect to the theory and holding that such a claim was not properly before the court on appeal).

[4]The body chart performed by medical personnel on defendant Betts demonstrates that Betts suffered a "knot with redness [and] skin chafing on [his right] forearm" as a result of Thomas' resisting Betts' efforts to remove the handcuffs.  Doc. 38-1 at 7.

[to allow him to remove the handcuffs] and got the same [negative] response as I was backing away from the door.  I could tell he was getting ready to mace me because [of] what I said to him… .  At the time of me reaching for the mat[] he was reaching for his mace (chemical) spray pulling it out in a swift motion.  Halfway me picking the mat[] up he sprayed [the chemical agent] resulting in some of the mace (chemical) spray getting on me and [me] blocking the rest.  I then move closer to the door to block out further connection with his spray… .  As Lt. Bradford came he plainly ask me am I going to give the cuffs back where I stated "call Captain McClain.["] [Bradford] then says as he's walking off … "I'm going to ask you one more time are you [going to] cuff up[?]"  I then state "Call Captain McClain."  He leaves after what seems to be minutes of me burning [and I] hit the sprinkler system with my hand in dire need of water [to] satisfy the burn. After the water stop coming out I see Captain [McClain].  He asks me to cuff up where I complied and was [taken] to the medical ER Room.  I then washed my face off in the[] Detox area [and thereafter underwent an evaluation and] assess[ment] [by a nurse].

Doc. 11 at 1–2 (footnote added).  The body chart compiled by the attending nurse demonstrates that Thomas suffered only redness to his eyes as a result of his exposure to the chemical spray.  The attending nurse further observed, "No Injuries. No Bruises. Denies any injuries… .  Is stable.  No Acute Distress noted."  Doc. 7-3 at 4.

### B.   Use of Chemical Agent

Thomas alleges that defendant Betts sprayed him with mace absent justification for use of a chemical agent.  Doc. 1 at 3; Doc. 11 at 4.  In response to the allegation of an improper use of mace, Betts avers that he deployed the chemical spray in an effort to gain control of the situation created by Thomas after Thomas refused several orders to relinquish his handcuffs and took physical actions which caused injuries to Betts.  Doc. 22-1 at 1–2. Specifically, Betts maintains that, while attempting to secure Thomas in his cell and after Thomas failed to comply with orders directing him to allow the removal of each of his

handcuffs, "inmate Thomas grasped my hand, after one of his hands [was] released from a cuff, and he would not release his grasp. I gave inmate Thomas a direct order to release his grasp, inmate Thomas physically resisted and did not comply. I [unholstered] my can of Sabre Red, yelled gas and administered a short burst to inmate Thomas facial area and the First Shift Supervisor Lieutenant Eric Bradford was notified of the incident.  Once inmate Thomas was secured, he was promptly taken to the healthcare unit for medical evaluation and treatment. Inmate Thomas did not make any further requests to me for medical treatment after the initial evaluation by the medical staff."  Doc. 22-1 at 1.  As is clear from the recitation of facts provided by Thomas in his amendment to the complaint, Thomas concedes that he failed to comply with several orders to relinquish his handcuffs and caused Betts to suffer injuries when he physically resisted the officer's efforts to remove each of his handcuffs.  *See*, *infra*, at 6–7.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "When prison officials maliciously and sadistically use force to cause harm, … contemporary standards of decency always are violated … whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted), citing *Hudson*, 503 U.S. at 9). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry' is 'not whether a certain

quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins*, 559 U.S. at 37).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002); *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (identifying the five factors relevant in determining whether force was applied maliciously or sadistically as "(1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force.") (citing *Whitley*, 475 U.S. at 320–21). "When evaluating whether the force used was excessive, we give broad deference to prison

officials acting to preserve discipline and security." *Pearson*, 665 F. App'x at 863–64 (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)).

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."  *Bennett*, 898 F.2d at 1533.  Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order.  Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force."  *Pearson*, 665 F. App'x at 864 (internal citation omitted).  The Eleventh Circuit has long recognized that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates."  *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (holding that "use of one burst of oleoresin capsicum (O.C.) spray against [the inmate-plaintiff after his failure to obey a direct order and engaging in a scuffle with guards] was not excessive force."). Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation.  Therefore, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.  A short burst is around five seconds or less."  *Pearson*, 665 F. App'x at 864 (internal quotation marks and citations omitted).

In this case, the first *Whitley* factor, the need for the use of force, is established by the undisputed evidence that Thomas refused direct orders to allow removal of his handcuffs and physically resisted the attempt by defendant Betts to remove his handcuffs.

> The second *Whitley* factor, the relationship between the need for force and the amount of force, also weighs against finding a constitutional violation. A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders. *See Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop); *Jones* [*v. Shields,* 207 F.3d 491, 495–97 (8th Cir. 2000)] (holding that the use of a type of pepper spray called capstun against a prisoner was not a violation of the Eighth Amendment when he had disobeyed a supervisor's order and then questioned a guard's order); *see also Baldwin v. Stalder,* 137 F.3d 836, 838, 841 (5th Cir. 1998) (holding that jail guards did not use excessive force when they sprayed a two-second burst of chemical mace into a bus filled with prisoners who had continued jumping on the seats, spitting at officers outside the bus, rocking the bus, and otherwise causing a disturbance after three times being told to stop); *Williams v. Benjamin,* 77 F.3d 756, 762–63 (4th Cir. 1996) (holding that the use of chemical mace was not excessive when a prisoner disobeyed an order to stop throwing water at a guard and then questioned the guard's second order to remove his arm from his cell's food service window); *cf. Vinyard* [*v. Wilson,* 311 F.3d 1340, 1348 (11th Cir. 2002)] ("Courts have consistently concluded that using pepper spray is reasonable … where the plaintiff was … refusing police requests.").

> Nor does the third *Whitley* factor—the extent of [Plaintiff's] injury from the initial use of pepper spray—favor finding a constitutional violation.  Pepper spray "is designed to disable a suspect without causing permanent physical injury.  Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle… ." *Vinyard,* 311 F.3d at 1348 (internal quotation marks and citations omitted). Any injuries or discomfort [Plaintiff] suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting.

*Danley*, 540 F.3d at 1307–08.

The fourth factor set forth in *Whitley*, which requires an assessment of "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them," 475 U.S. at 321, does not support a finding of a constitutional violation when applied to the use of a chemical agent in this case. Specifically, Thomas created a security risk when he refused to allow the removal of his handcuffs, failed to obey orders that he voluntarily do so and physically resisted the officer's efforts to remove the handcuffs. The court finds that the use of a chemical agent by defendant Betts constituted a reasonable response to the threat posed by Thomas. Finally, the fifth *Whitley* factor, any effort made to temper the severity of the use of force, must be resolved in Betts' favor, as Betts deployed only a short burst of pepper spray and correctional personnel transported Thomas to the health care unit as soon as Thomas complied with an order to allow correctional officials to re-apply his handcuffs so that he could be secured for removal from his cell.

The undisputed facts of this case, when examined in light of the relevant *Whitley* factors, establish that defendant Betts did not subject Thomas to the use of excessive force as prohibited by the Eighth Amendment. Instead, the objective evidence demonstrates that there was a need for the use of force due to Thomas' refusing several orders to allow defendant Betts to remove his handcuffs and to the physical resistance by Thomas upon his lack of compliance with these orders. The evidence also demonstrates that defendant Betts used only a reasonable amount of force against Thomas in a good faith effort to gain control of the situation. Finally, the evidence establishes that defendant Betts did not apply force

in a sadistic or malicious manner. Defendant Betts is therefore entitled to summary judgment on the excessive force claim lodged against him.

### C.  Failure to Protect

Insofar as Thomas alleges that defendant Young failed to intervene to protect him from the use of a chemical agent by defendant Betts, he is likewise entitled to no relief. The Eleventh Circuit has recognized that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1300–01. However, for liability to attach regarding the failure of a correctional official to intervene in another officer's use of force, "there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Fillmore v. Page,* 358 F.3d 496, 506 (7th Cir.2 004) (holding that there is no plausible claim for failure to protect or failure to intervene "because there was no [underlying] violation that compelled intervention."); *see also Sanders v. City of Union Springs*, 207 F. App'x 960, 965 (11th Cir. 2006) ("[G]iven that the plaintiffs are unable to establish a constitutional violation [regarding the challenged action], their claim for failure to intervene [as to such action] must fail."). Under the circumstances of this case, the court finds that defendant Young had no duty to intervene because there was no unconstitutional use of force by defendant Betts. Thus, summary judgment is due to be granted in favor of defendant Young on the failure to protect claim presented against him.

### D.  Medical Treatment

Thomas appears to complain that the defendants did not transport him to the health care unit for medical treatment until he complied with their orders regarding removal and replacement of his handcuffs.  To prevail on a claim concerning an alleged denial or delay in medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Specifically, correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (as directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That … negligence … is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble*, 429 U.S. 97, 105–07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [official's] harmful acts were intentional or reckless.  *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional

or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

When seeking relief based on deliberate indifference to medical needs, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk to the prisoner's health or safety). Negligence does not "become a constitutional violation simply because the victim is incarcerated." *Farmer*, 511 U.S. at 835, 836 (A complaint alleging negligence in obtaining medical treatment for an inmate "does not state a valid claim of [deliberate indifference] under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence … is insufficient to establish deliberate indifference."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence" to proceed on an Eighth Amendment claim.).

Furthermore, "to show the required subjective intent …, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' … which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and …

draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference). Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett*, 898 F.2d at 1533; *Scott*, 550 U.S. at 380.

The amendment to the complaint and the undisputed medical records belie Thomas' claim that the defendants acted with deliberate indifference to his eye irritation suffered on June 1, 2016, after his exposure to a chemical agent. A thorough review of these documents demonstrates that after gaining control of Thomas and securing him for removal from his cell, correctional officials escorted Thomas to the health care unit for decontamination and treatment. Once at the health care unit, Thomas underwent decontamination by washing his eyes in the designated area. Nurse Desiree Neal then examined Thomas. During this examination, Nurse Neal observed only redness to Thomas' eyes and noted "No Injuries.

No Bruises. Denies any injuries. … Is stable. No Acute Distress noted." Doc. 7-3 at 4. Based on her assessment of Thomas' condition, Nurse Neal determined that "[n]o further follow up [is] needed at this time[,]" and advised Thomas to contact the medical staff via the sick call process if his symptoms worsened.  Doc. 7-2 at 6.  Neither of the defendants had any involvement with future medical treatment sought by Thomas.  Doc. 22-1 at 1; Doc. 22-2 at 1.

Under the circumstances of this case, the court finds that the actions of the defendants did not constitute deliberate indifference.  Thomas' self-serving statements of a lack of due care do not create a question of fact in the face of contradictory, contemporaneously created medical records.  *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see also Scott*, 550 U.S. at 380 (holding that a court need not believe a party's version of facts at the summary judgment stage when such version is "blatantly contradicted by the record, so that no reasonable jury could believe it[.]"); *Feliciano*, 707 F.3d at 1253–54 (11th Cir. 2013) (same).  In addition, Thomas has presented no evidence that the defendants consciously disregarded a known need for treatment of a serious medical need.  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference). Instead, the only evidence before the court indicates that the defendants promptly referred Thomas to medical personnel for evaluation and

treatment once Thomas complied with their orders and permitted the officers to secure him for removal from his cell.  The record is therefore devoid of evidence showing that either defendant acted with deliberate indifference to Thomas' medical needs. Consequently, summary judgment is due to be granted in favor of the defendants on this claim.

### E.  Equal Protection

Thomas makes a purely conclusory and unsupported allegation that defendant Betts violated his right to equal protection. Doc. 11 at 5. The law is clear that merely labeling an action as a violation of equal protection fails to state a claim on which relief may be granted. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Despite the tendency of all rights to declare themselves absolute to their logical extreme, there are obviously limits beyond which the equal protection analysis may not be pressed… . The Fourteenth Amendment does not require absolute equality or precisely equal advantages,… nor does it require the State to equalize [prison] conditions." *Ross v. Moffitt*, 417 U.S. 600, 611–12 (1974) (internal quotation marks, footnote and citations omitted); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").

In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other

constitutionally protected basis." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) and *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)). "[O]fficial action will not be held unconstitutional solely because it results in a … disproportionate impact… . Proof of … discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65 (1977). "Discriminatory purpose … implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker … selected … a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote, internal quotation marks and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Thomas fails to identify any similarly situated inmate who received differential favorable treatment from defendant Betts. Thus, Thomas' "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("[T]here is ***no*** evidence that any [individuals] in the same

position as the plaintiff have been treated differently from the plaintiff… . The plaintiff has offered the Court nothing on which to base his equal protection claim. Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

> In addition, this claim provides no basis for relief

> because [Thomas] has not alleged … that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin.  *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration … of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92–93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).  Even had Thomas made such an allegation, it is undisputed that defendant Betts used a chemical agent against Thomas because Thomas repeatedly refused several orders to relinquish his handcuffs, and physically resisted the efforts of Betts to remove his handcuffs.

In light of the foregoing, the court finds that the record is devoid of evidence that defendant Betts acted with purposeful discrimination.  Under applicable federal law, the

allegations made by Thomas are insufficient to show an equal protection violation and summary judgement is due to be granted in favor of defendant Betts on this claim.

## F.  Violation of Administrative Regulations

To the extent that Thomas asserts that the defendants violated their own administrative regulations, he is entitled to no relief. The law is well settled that infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations. *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (holding that Plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995) (noting that prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designated to confer [constitutional] rights on inamtes"); *Magluta v. Samples,* 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751–52 (1979) (mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 F. App'x 300, 303 (4th Cir. 2009) (same).  For these reasons, the defendants are entitled to summary judgment on Thomas' claim alleging a violation of prison policies or regulations.

## G.  Criminal Prosecution

Insofar as Thomas seeks to have state criminal charges brought against the defendants, he is due no relief from this court. A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (holding that a plaintiff has no constitutional right to have a defendant criminally prosecuted); *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, *1 (6th Cir. 1999) (holding that "the district court properly dismissed [Plaintiff's] complaint as frivolous … [because] contrary to [his] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted."); *Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C 2003) (finding that criminal statutes "do not convey a private right of action."); *Risley v. Hawk*, 918 F.Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997) (finding that no private right of action exists under federal statute criminalizing conspiracies to deprive an individual of his constitutional rights); *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D. Tex 1997) (citations omitted) (finding that although "18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States[,] [t]he statute does not create a private cause of action.").  Thus, any request for criminal prosecution of the defendants alleges violation of a legal interest which does not exist, and summary judgment is therefore due to be granted in favor of the defendants on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be granted.

2. Judgment be entered in favor of the defendants and against the plaintiff.

3. This case be dismissed with prejudice.

4. Costs be taxed against the plaintiff.

On or before **May 17, 2019**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which an objection is made. Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 3rd day of May, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge